■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WINSTON BOYCE, Appellant. [828 NYS2d 192]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (D'Emic, J.), rendered February 25, 2004, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reducing the defendant's conviction of murder in the second degree to manslaughter in the second degree, and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for sentencing on the conviction of manslaughter in the second degree.

In the early morning hours of July 29, 2001 the body of Gracielle Monique Goode (hereinafter the deceased) was found inside her apartment. She had been killed in a struggle during which she had been stabbed once in the neck, beaten, strangled, and smothered. Shortly after the body was discovered, the defendant, who was the father of the deceased's son, was questioned by police in connection with the murder. He was first encountered coming out of his apartment, in which the police found the son unharmed. While the police were in the apartment, the defendant produced a bottle and ingested part of its contents, which later proved to be hydrochloric acid. The defendant vomited in the police car, and was first taken to the local police precinct, and later taken to the hospital.

The defendant gave two statements to the police, one at the

precinct, the second at the hospital. He admitted having had a fight with the deceased over the fact that he had had a child with another woman. He claimed, inter alia, that, during the struggle, the deceased had tried to grab his testicles and that he had put his hands on her throat. He denied having had a knife and, at one point, claimed that the deceased was speaking when he left her apartment. He told the police that he had ingested the acid when they told him that the deceased was dying.

The defendant was indicted for both intentional and depraved indifference murder, and for criminal possession of a weapon in the fourth degree. At the close of evidence, the defendant unsuccessfully moved to dismiss the count charging depraved indifference murder. The court submitted both murder counts to the jury. The jury convicted the defendant of depraved indifference murder and acquitted him of intentional murder. He now appeals.

"The Court of Appeals has taught that, except in rare and extraordinary circumstances, one person's attack on another, no matter how violent or how great the risk of harm it creates, does not rise to the level of depravity and indifference to life contemplated by the statute defining depraved indifference murder" (*People v McMillon*, 31 AD3d 136, 142 [2006], *lv denied* 7 NY3d 815 [2006]). Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally insufficient to establish the defendant's guilt of depraved indifference murder (*see People v Feingold*, 7 NY3d 288 [2006]; *People v Suarez*, 6 NY3d 202 [2005]).

There is no question that the acts committed against the deceased in the course of the struggle were "voluntary acts" as defined in Penal Law § 15.00 (2). That does not mean, however, that those acts were "done with an *intent* or 'conscious objective' to kill" (*People v Rodriguez*, 33 AD3d 730, 731 [2006]; Penal Law § 15.05 [1]; *see People v McMillon, supra* at 140 n 1). In this case, involving a violent struggle between the parents of a child, the jurors, who saw and heard the witnesses, and who concluded that the defendant in fact caused the deceased's death, rejected the charge that he had done so intentionally. Stated otherwise, the jury refused to find that the defendant had acted with the intent, that is, with the conscious objective, of causing the deceased's death. Instead, the jury implicitly found, unanimously and beyond a reasonable doubt, that the defendant had acted recklessly with respect to the deceased's death, in that his conduct created a substantial and unjustifiable risk that she would die as a result of his actions, that he

was aware of that risk and acted as he did anyhow, and that, in disregarding the risk, he deviated grossly from the standard of conduct that a reasonable person would observe in the situation (*see* Penal Law § 15.05 [3]). Viewing the evidence in the light most favorable to the prosecution (*see People v Contes, supra*), we cannot conclude that there was no valid line of reasoning or permissible inference that would allow a reasonable jury to conclude that the defendant acted recklessly (*see People v Rodriguez, supra; see also People v Suarez, supra* at 212 n 6).

Nonetheless, the defendant's conviction of depraved indifference murder cannot stand, not because the evidence demonstrated a manifest intent to kill (*see People v Payne,* 3 NY3d 266 [2004]; *People v Gonzalez,* 1 NY3d 464 [2004]), but only because it failed to establish the depravity and indifference to human life required for the commission of the crime (*see People v Feingold, supra; People v Suarez, supra*). The evidence was sufficient, however, to support the jury's finding, implicit in its verdict, that the defendant caused the deceased's death recklessly, and therefore that he committed the lesser-included offense of manslaughter in the second degree (*see People v Magliato,* 110 AD2d 266 [1985], *affd* 68 NY2d 24 [1986]; *see also People v Madison,* 22 AD3d 684, 687 [2005]). Accordingly, we modify the judgment by reducing the conviction from murder in the second degree to manslaughter in the second degree (*see People v Atkinson,* 7 NY3d 765 [2006]; *People v Rodriguez, supra; People v McMillon, supra*). Crane, J.P., Skelos, Fisher and Lifson, JJ., concur. [*See* 3 Misc 3d 270 (2004).]