09-3758-pr
McMillon v. Culley

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of June, two thousand ten.

PRESENT: JOSEPH M. McLAUGHLIN,
 CHESTER J. STRAUB,
 REENA RAGGI,
 *Circuit Judges.*

----------------------------------------------------------------------
WILLIAM McMILLON,

 *Petitioner-Appellant,*

 v. No. 09-3758-pr

MALCOLM CULLEY, Superintendent, Livingston
Correctional Facility,

 *Respondent-Appellee.*
----------------------------------------------------------------------

APPEARING FOR APPELLANT: LYNN W.L. FAHEY, Appellate Advocates, New York, New York.

APPEARING FOR APPELLEE: KEITH DOLAN, Assistant District Attorney (Leonard Joblove, Jodi L. Mandel, Assistant District Attorneys, *on the brief*), for Charles J. Hynes, District Attorney, Kings County, Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 6, 2009, is AFFIRMED.

William McMillon appeals from the denial of his petition for a writ of habeas corpus, see 28 U.S.C. § 2254, which petition challenged his New York state conviction, as modified, for second-degree manslaughter. See N.Y. Penal Law § 125.15(1); People v. McMillon, 31 A.D.3d 136, 816 N.Y.S.2d 167 (2d Dep't 2006). McMillon here argues that (1) the trial evidence was insufficient to support a finding that he recklessly killed Karl Francois because McMillon shot Francois once in the heart from at least five feet away; and (2) the admission of McMillon's written and videotaped confessions at trial violated Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny. The district court denied the petition but granted a certificate of appealability. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Standard of Review

We review the denial of a habeas corpus petition de novo. See Jones v. West, 555 F.3d 90, 95 (2d Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), however, we cannot vacate a state conviction unless the challenged state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2)

2

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009). A state court decision involves an "unreasonable application" of clearly established federal law "if it correctly identifies the governing legal principle but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case." Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009). To support § 2254 relief, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

2.     Sufficiency Challenge

A jury acquitted McMillon of intentional murder, see N.Y. Penal Law § 125.25(1), but convicted him of depraved indifference murder, see id. § 125.25(2). Concluding that the jury properly found recklessness but that there was insufficient evidence of depraved indifference, the Appellate Division reduced McMillon's conviction to second-degree manslaughter and, as modified, affirmed. See People v. McMillon, 31 A.D.3d at 141-42, 816 N.Y.S.2d at 172-73. McMillon here submits that the state court unreasonably applied the rule of constitutional sufficiency, see In re Winship, 397 U.S. 358, 364 (1970), because the trial evidence could not support a finding of the recklessness required for second-degree manslaughter, see N.Y. Penal Law § 125.15(1), but only of the intentional killing required for second-degree murder, see id. § 125.25(1), a crime of which he stands acquitted. See

3

People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116 (2004); People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224 (2004); People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572 (2003); see also People v. Gallagher, 69 N.Y.2d 525, 529, 516 N.Y.S.2d 174, 175 (1987) ("One who acts intentionally in shooting a person to death – that is, with the conscious objective of bringing about that result – cannot at the same time act recklessly – that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur." (citations omitted)).

A defendant raising a sufficiency challenge "bears a heavy burden because a reviewing court must consider the evidence 'in the light most favorable to the prosecution' and uphold the conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in Jackson)). Applying AEDPA's deferential standard of review, we conclude, like the district court, that the state court reasonably applied these federal law principles in deciding that the evidence was sufficient, under state law, to support a conviction for second-degree manslaughter. See generally Policano v. Herbert, 453 F.3d 79, 91-92 (2d Cir. 2006) (Raggi, J., dissenting from denial of rehearing en banc) (discussing why AEDPA deference may be at its highest when habeas petition "challenges a state court's determination that the record evidence was sufficient to satisfy the state's own definition of a state law crime").

While a single shot to the heart may be consistent with intentional murder under New York law, it is also consistent with second-degree manslaughter. See People v. Payne, 3

4

N.Y.3d at 272, 786 N.Y.S.2d at 119 ("[I]f a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder."); cf. People v. Lawhorn, 21 A.D.3d 1289, 1290, 804 N.Y.S.2d 517, 518 (4th Dep't 2005) (holding second-degree manslaughter conviction appropriate where "[d]efendant admitted that he intentionally stabbed the victim once in the chest, but he contended that he meant only to inflict pain"). Here, McMillon's confession stated, "By no means did I wish for this to happen," and "All I intended to do was scare him away and I never intended to hurt anyone. Things just got out of control." Trial Tr. at 57-58.[1] In the context of a heated and uncertain encounter, these statements are sufficient to support a finding that McMillon acted recklessly rather than with a specific intent to kill when he shot Francois. See N.Y. Penal Law § 15.05(3) (defining "recklessly" as being "aware of and consciously disregard[ing] a substantial and unjustifiable risk"). Indeed, as the state court observed, the jury's acquittal of McMillon on the intentional murder charge necessarily constitutes a finding that there was reasonable doubt regarding his

---

[1] McMillon also stated, "I then pulled out the gun that I had and I didn't get a chance to point it. It went off before I raised it up to waist height. When the gun went off I was shocked and everyone ran except me, the victim, and another guy Rahmel." Trial Tr. at 57. While the autopsy report conflicted with McMillon's account of where he fired the gun, the jury was entitled to consider and credit McMillon's statements that he "didn't get a chance to point" the gun and that he was "shocked" when it fired, both of which support a finding of recklessness. See generally People v. Romero, 7 N.Y.3d 633, 641, 826 N.Y.S.2d 163, 168 (2006) ("[I]t is not in the province of the court to review or determine controverted questions of fact arising upon conflicting evidence, but that the jury is the ultimate tribunal in such cases . . . ." (internal quotation marks omitted)).

intent to kill. See generally People v. Gallagher, 69 N.Y.2d at 530, 516 N.Y.S.2d at 176 ("It is not for the [court] in the first instance to determine whether defendant acted intentionally or recklessly at the time of the crime. That is the jury's function."). And, in requesting the manslaughter charge, McMillon's own defense attorney stated, "I think certainly there is manslaughter in the second degree for reckless conduct." Trial Tr. at 266; see also People v. Torres, 34 A.D.3d 704, 704, 828 N.Y.S.2d 65, 66 (2d Dep't 2006) (modifying depraved indifference murder conviction and noting that "the evidence was legally sufficient to establish the lesser-included offense of manslaughter in the second degree, a charge that the defendant had requested be submitted to the jury" (citations omitted)).

Accordingly, the state court reasonably concluded that, when considered in the light most favorable to the prosecution, the evidence was sufficient to support the finding of recklessness required to sustain McMillon's second-degree manslaughter conviction.

3.    *Miranda* Challenge

McMillon submits that the state court's affirmance of the admission of his confessions at trial represented an unreasonable application of Miranda v. Arizona, 384 U.S. 436, and Missouri v. Seibert, 542 U.S. 600 (2004), because detectives did not give him Miranda warnings until he appeared ready to talk about the incident. Generally, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." Oregon v. Elstad, 470 U.S. 298, 318 (1985). In Seibert, however, a divided Supreme Court held that

6

Miranda was violated when the required warnings were not given until after the suspect confessed during an unwarned interrogation whereupon "there was little, if anything, of incriminating potential left unsaid." 542 U.S. at 616 (plurality opinion). Thus, "Seibert lays out an exception to Elstad for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession." United States v. Carter, 489 F.3d 528, 536 (2d Cir. 2007). In Carter, we held that Seibert did not apply when the suspect made only one pre-warning inculpatory statement, and "there was almost no overlap between this statement and the full confession he gave after he received the warnings." Id.

Applying these principles to this case, we conclude that the state court reasonably applied Supreme Court precedent in affirming the admission of McMillon's confessions. This case is not like Seibert because McMillon did not make an inculpatory statement before receiving Miranda warnings. In fact, McMillon denied having shot Francois during a pre-warning interrogation, after which McMillon told detectives simply that he would tell them what happened.[2] It was then that detectives gave McMillon Miranda warnings, the completeness of which is not challenged. McMillon agreed to waive his rights and made both oral and written confessions. In sum, there was no "overlapping content" between McMillon's pre- and post-warning statements. Missouri v. Seibert, 542 U.S. at 615 (plurality

---

[2] McMillon's statement that he would tell officers what happened did not violate his Fifth Amendment rights because it was not self-incriminating. See Nova v. Bartlett, 211 F.3d 705, 708 (2d Cir. 2002) (concluding that suspect's statement that "I'll tell you the truth" was not incriminating).

opinion). Further, the state court reasonably concluded that the <u>Miranda</u> warnings administered before McMillon's subsequent videotaped confession were effective because they occurred several hours after his oral and written confessions and a prosecutor was present. <u>See</u> <u>id.</u> at 615 (plurality opinion) (considering "timing and setting" of and "continuity of police personnel" between first and second interrogation in evaluating whether <u>Miranda</u> warnings were effective); <u>see also</u> <u>id.</u> at 622 (Kennedy, J., concurring in the judgment) (noting that "a substantial break in time and circumstances between the prewarning statement and the <u>Miranda</u> warning may suffice in most circumstances"). On these facts, the state court's affirmance of the admission of McMillon's confessions at trial does not represent an unreasonable application of <u>Miranda</u> or its progeny.[3] We, therefore,

---

[3] McMillon's suggestion that his confessions were not voluntary because he was a vulnerable eighteen-year-old distraught after his mother's death is unavailing. Like the district court, we consider the totality of circumstances and identify no indication that McMillon's confessions were involuntary. <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>Deshawn E. v. Safir</u>, 156 F.3d 340, 347-48 (2d Cir. 1998); <u>see also</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of <u>Miranda</u> are rare."). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' . . . ." <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986). Here, we identify no "police overreaching," "trickery," or "deceit" suggestive of involuntariness. <u>Id.</u> at 170 (internal quotation marks omitted). In fact, rather than exploiting McMillon's distress, officers permitted him to attend his mother's wake and speak with his father before they took him into custody, and they commenced interrogation only after McMillon had "composed" himself. Suppression Hr'g Tr. at 71; <u>cf.</u> <u>United States v. Salameh</u>, 152 F.3d 88, 117 (2d Cir. 1998) ("A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." (internal quotation marks omitted)).

8

conclude that the district court, reviewing the state court's rulings pursuant to AEDPA, properly denied McMillon's petition for a writ of habeas corpus.

We have considered McMillon's other arguments on appeal and conclude that they lack merit.  Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court